Good morning, Your Honors. James Kahn on behalf of Plaintiffs and Appellants, Brandon Holter. I'd like to begin by reiterating that the U.S. Supreme Court recently, in a case called Scott v. Harris, recently reiterated the proposition that in a qualified immunity case, such as what we have here, the plaintiff's version of events is what is required to be considered. Unless there's a videotape. Unless there's a videotape. Correct. Well, that's a great point. So the videotape exception to the... There was a videotape exception in Scott. However, there is no videotape here. So the plaintiff's version of events is required to be considered. The trial court stated that they considered all facts and that all facts were considered in light of the plaintiff's version of events. Okay, let's take the facts in light of the plaintiff's version. In light of... Your client's decedent is involved in a nighttime burglary. Stop me when I'm saying anything that's not a fact that you've considered. And police are called, and your client and his accomplice... I'm sorry, your client. I'll just say your client. I understand. ...are hiding behind a door. And there are two cops on the other side who are trying to figure out if somebody is in there. One of the cops opens the door. At that point, the compressor goes on. There's a big noise. You haven't disputed that, right? Nothing. The only thing I would dispute, Your Honor, is that you have said that our client, to use your phrase, and the accomplice were hiding. They weren't hiding. What they were doing is, like you say, they were committing a commercial burglary. The police never announced themselves, and basically what happens... Excuse me. Let me just make sure I understand. What I thought your position was is that your client was couching behind the door, trying to look through a crack or a keyhole and see whether there's somebody on the other side. Am I factually accurate? I think that's a fair assessment. Why isn't that hiding? I mean, if you're not hiding, you just bang open the door and go into the next room and look. Well, I think that's a fair assessment. However, we don't really know what this person was doing. He was crouching at the door. What he was not doing was attacking the officer. Well, tell us what happened next. What happened next was the door opened and gunshots were fired. Well, when I say the door opened, the police officer opened the door, right? Now, I would argue that that's disputed, Your Honor. Tell us your version. Our version of the events is the door opens and... By itself? I don't know. What does the accomplice say? The accomplice does not know. The accomplice sees the door open, and the accomplice hears gunshots, and the accomplice sees the decedent fall through the door. There is some limit to taking the facts, as alleged by the plaintiff, if there are no facts. So, in other words, we have this situation. I thought the officer said they tried to open the door, and then whether they open it or through the force of their weight, these gentlemen fall through the door, that seems unclear. But in any event, they come tumbling out. Is that fair to say? It's fair to say. However, it's not fair to say whether they... Is there anything that contradicts that? Well, we're not sure if they came tumbling through the door on their own accord or whether they were shot and came tumbling through the door. Well, if they didn't come tumbling through the door until they were shot, then that means the door opened of its own accord, and the police saw this man crouching right there. Correct. Is that your version? Our version is the door opens, police open fire. That's our version. No, but before they opened fire, they must have seen something. I don't think... Open fire into a dark hole? No, I think the officer's account was an attack, and that's why we're saying... What's your account? Our account is that the door simply... In other words, the version most favorable to the plaintiff. The version most favorable to the plaintiff is the accomplice and the decedent are doing nothing. They have no idea that the police are present. No, no, but I mean, what's your version? What happens as the door opens? The door opens and the decedent is simply standing there. Standing or crouching? Crouching down. You're correct, Your Honor. Let's be very factually specific. He's crouching down at a door. But the point is simply, there is nothing that the decedent does to generate the idea in the officer that he is planning an attack or threatening serious bodily harm or threatening lethal force. So the real issue here is whether the officer's use of force at the moment, at the time that the gunshots are fired, is reasonable under the circumstances. Why don't you add to your analysis the fact that this noise starts, the compressor starts right when the door opens. As best I can tell, it happened contemporaneously. Now this wouldn't have been something that was caused by your client or his accomplice, but nevertheless it has the effect of startling. It's a big noise just as the door opens. You don't think that adds to the reasonableness of the behavior? I most certainly do think it does, but I would argue, Your Honor, that all of those facts are not created by the clients. Those are facts that the officers who are trained to deal with these circumstances fail to recognize. Why would an officer enter into an enclosed area? Why would an officer remove himself from an area of cover to try to open a door? These are all things that, again... He wasn't doing it for his health. I mean, he was on a job. He had been called because your client and his accomplice had broken in unlawfully, and the officer wasn't there looking for a good time. He was there doing his job. What was he supposed to do, leave? No, understandably he's not supposed to leave. However, there is police protocol for this type of situation. What would that have been? Well, in this situation, the Pasadena police, in their own analysis, their own administrative protocol in this shooting, acknowledged that they should have called for backup. They should have perhaps got a canine unit that was within the vicinity of the scene. They did none of this stuff. And so what I want to suggest is that the reasonableness of this officer using lethal force is really a creation of a variety of circumstances that lead to this event. And because we really have to examine the reasonableness of the officer at the time he fires the gun, I'm suggesting that any other reasonable officer in that circumstance, with the facts that there is no attack, our guys are unarmed, there is no attack, there is no touching, if you take our version of the events, then the officer's reasonableness at the time he fires his weapon is called into question. Did the district court conclude either that the officer's action was unreasonable or that there had been a constitutional violation? The district court found that there was no constitutional violation because the officer's actions were reasonable under the circumstance. Now, I would argue that the officers... To give you an example, the case that's cited by the city is a case called Sudak v. Hong, and they say deadly force is justifiable under the Fourth Amendment, and this is the quote, if a reasonable officer would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others. But it goes on to say, the reasonableness of the use of force depends not only on whether the officers were in danger at the precise moment that they used the force, but also on whether the officers' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force. You have about a minute left. Do you want to say it? I would like to say it, Your Honor. Thank you very much. We'll hear from the city. Good morning, Your Honor. Hugh Halpern for the City of Pasadena and the defendant officers. I'd like to take a moment to just describe the situation to you, even though you've read it and you've heard about it. The officers responded to a burglary alarm at a location, a commercial burglary. When the officers got there, their actions were reasonable. They inspected the entire exterior of the building looking for any evidence, and they found a portion of the wall that had been brought away, but there was no entry made there. They then looked into the interior to see if there was anything there that would give them a hint someone had broken in. There was nothing. As they went around the building, they found a dark causeway between the location of the burglary and an auto supply store. They briefly illuminated that to see what it was, and it appeared to be a storage area for the automobile shop, not for the car stereo store. And what did they do then? They proceeded down, but they didn't turn their flashlight on to illuminate it the whole time. They turned it on intermittently so he could see his path down. What was the reason? Because there's always a potential somebody's hiding, and a flashlight makes a big target. He got down to the end, and what did he find? It was a compressor. On the other side of the compressor, he looked around, and there was a door. He didn't step in front of the door initially. He's a well-framed officer. He reached around and tried to open the door there so he wouldn't be exposed to danger. The door wouldn't open. He tried a second time, and it still wouldn't budge. He then moved around the door to open the door and went to open it. The door opened, and a compressor came on, and what he saw was a shape, that's all he had, and felt something reach out and grab him. But that's contested, isn't it? Right. Well, let's talk about that. Show me the contested fact on that. Well, let me say, here's what I think. We're, like, down to this minuscule amount of contested facts. Here's what Mr. Montgomery said. After he was crouching and looking through the doorknob, he said, at that point, they don't know if the officers opened the door or if he just lost his balance and fell out. So it does seem to me, on that point, the officers say they opened the door and he fell out. Mr. Montgomery says, I don't know if they opened the door or if the guy just tumbled out. So that, at least, is contested. It doesn't matter. Let's talk about it. If you read further in that deposition, he doesn't remember whether it's light or dark. I know that, but you're trying to put it in the life's most favorable to your clients, which is not the proper approach. You're looking at the best life for the plaintiff, right? And I agree with that, but that has to be based on facts, not on speculation or hypothesis. But you still have his testimony that, you know, all right, he tumbled out. But there's certainly nothing to support from that deposition that somebody reached out for the officer or some movement was made toward the officer, right? There is nothing but the officer's testimony, which is uncontested. Well, the other side is because he can't see. He's doing it on speculation. No, he says, you know, at worst, the guy tumbled out. There was no action against the officer. Except he doesn't know whether it's light or dark. He can't see what's on the other side. Now, remember, there's no question. Of course he doesn't know whether it's light or dark because the flashlight keeps going on and on. There's no flashlight at that point in time. The officer had turned the flashlight off. At that precise point in time? We don't know that. There's a door, and the door has a door hole through. That's the only where light can come through. The officer, as he walks down the hallway, intermittently turns on the light. When he gets to the door, the officer says, I took my flashlight because I have my gun in one hand, stuck it in my waistband. It's off now, so he can reach around to try to pull the door. It's dark now when this is going down. What about the position of the plaintiff? Those actions weren't unreasonable because it was sure to create some kind of situation that shouldn't have been created. He should have called for backup, according to the City of Pasadena's own rules. Under certain circumstances. In this case, this is one of thousands of burglaries that our officers respond to. Ninety-nine percent of those burglaries are faults. What have the officers done? They've done everything they can and determined there didn't appear to be a burglary. It was his last step in his duty to do his job to go down and check that storage, which he didn't even believe went to that building. He suddenly finds a door at that location. There's a doorknob there. He sees no light. That's uncontested. He sees nothing there. It's also uncontested that that door swings freely. It is uncontested. That door swings freely. When he pulls on that door, somebody's holding that door. What about this testimony? Again, you're painting a nice patina, which is appropriate inferences from the facts, but that would be appropriate more if you were in the jury trial. We're kind of stuck with the very few facts that we have. So Mr. Montgomery says, The door opened and Holter fell from his crouching position to the ground. And Mr. Montgomery also says, Holter was in a crouching position when I heard the gunshots. So it seems to me we have to take that testimony as true, do we not? If we do, and I think that is, we can't contest the fact that he is in a crouching position looking down through a keel or a doorknob. And Mr. Montgomery says he was in a crouching position when the gunshots were fired. And he does say that, but he also says he fell through the door. But what's inconsistent between those two things? If he's falling through the door to an officer who has just tried to open a door twice or three times. If he's falling through the door and he's already shot. He can't be shot until the door comes open. There's no bullet holes in the door. The door is open before he is shot. So that door comes open, whether it is the officer that has now been released by Mr. Holter on the other side that brings the door open or Mr. Holter bursts through that door, what confronts the officer is someone coming at him and he fires. Now what is this? Well, the officer's justification for firing is what? According to his own testimony that he thought. He thought he was under attack. He thought he was being attacked, attacking him, right? He believed he was under attack from a person that had been lying in wait on the other side of the door. He shot in self-defense. And think about his actions. Now let me ask this question. He didn't fire at the man standing behind him. Let me ask this question. I mean, his supposition that he was being attacked and that's what justified his firing his weapon, is that uncontested? That that's the officer's belief? Absolutely. No, no, no, no, that the decedent was attacking him. Is that uncontested or is that contested? It is contested because they are saying he fired at the door. If it's contested, then the firing is not justified, is it? No, if he was not being attacked, he was not justified in firing. Do you agree with that? No, it's what a reasonable officer would believe under the circumstances of what is occurring. In those circumstances. No, but is he reasonable in believing that if he was not being attacked? You're asking a question that can't be answered. Well, if it can't be answered, then it should go to the jury, shouldn't it? No, the totality of the circumstances show here that this person, this felony burglar was lying in a position behind this door. This door comes open. He doesn't announce himself. He doesn't say, I give up. No, but the door comes open and he's not in an attack mode. He's coming towards the officer. What would a reasonable officer believe in the dark when a shape comes at him? Well, I don't think that necessarily follows from Montgomery's deposition that he was coming toward the officer. In other words, you could read Montgomery's deposition as, you know, his coming toward the officer didn't happen until he was shot and he started, you know, after being shot, he fell forward. Isn't that a reasonable reading of the Montgomery deposition? That is what his statement is there. Right. But it has to be taken in the context of what else he says and what he understands. So isn't it contested? Isn't it controverted whether or not, you know, he was under an attack mode? If it's contested, then there's no justification for the shooting. I disagree. It is not the intent of what Mr. Montgomery thinks or what Mr. Hall was doing. Not the intent. It's the reasonable belief of the officer. Not the intent. The objective facts. In other words, if the objective facts don't support that he was coming forward, then there was no justification for the shooting. There's a reasonable belief of the officer of what was occurring. No, the question is, is that reasonable or not if the guy was not coming toward him? The officer's perception is he was coming toward him. He fell out of the doorway. All right. It's uncontested. Suppose that perception is mistaken, that he was not coming toward him. Is it still reasonable? It wouldn't matter in these circumstances. He came at him out of the dark. He fell out of the door. You see the photographs. That's his testimony that he came at him. But the Montgomery testimony is he did go at him. He went at him, whether it was intentional or accidental is a question. No, no, no, no, no. Whether he went at him before or after he was shot, that's the difference. The question is when he came at him. He did come at him. The door comes open. The officer steps back, starts to fall, sees the person coming toward him. Whether that person is falling because he tripped or whether he's coming to attack, that is not disputed. No, no, or he's falling because he's been shot. The question of the shots is a question on when that occurred. Here really is what it boils down to is the plaintiff's version that he's crouching behind the door. Mr. Montgomery said, he's still crouching when I heard the shots. So in other words, he's crouching and being shot, and then he's shot. Police officers know he's actually falling out and coming at me. So we have kind of a gap, in effect, in terms of whether, you know, it's obviously not happening in slow motion. It's happening fairly quickly, but isn't there sort of a factual issue? Because it's not our role to figure out exactly what happened. The officer, if the plaintiff's facts are true, that he was still crouching and then he was shot, wouldn't that be different from he's falling out the door and then I shot him because I thought he was coming at me? But I think you understand, you can't take every statement of Mr. Montgomery without taking them all in context. If he can't see what's going on, if he's turned away from him, if he's in front of him several feet, if it is dark, Well, you're attacking his credibility now. No, no, I'm saying the facts that you have. Yes, you are. No, you can't win because he can't see what he's testifying to. He can't say yes or no in the same position and have those facts. If you had a blind person as an accomplice, he could testify and say, you know, I felt him fall forward or I felt him crouching and then the gunshots came. You go to trial and you say, look, I'm sorry, but that gentleman is blind. So the jury is free to disbelieve his view. You're just doing that with a sighted person saying, well, he didn't have very good visibility. So if your case relies on his vantage point, then I think we have a pure credibility issue. If your case relies on something else, we might have a different issue. Don't you have a better case that he says he doesn't know? I'm sorry. Didn't Montgomery say he doesn't know? That's what I'm trying to say. Not only that. You're actually saying something quite different. Okay, well, he doesn't know. I mean, isn't your best case that, in fact, the witness says he doesn't know what happened? Correct. He's speculating about possible things that could have happened, but he's not testifying of any one of the things. The one possibility he speculates is that the guy tumbles and the door falls open with him tumbling out. That's one possibility. But he doesn't testify that either of those facts happened. Correct. And I'm inarticulate, but that's what I've been trying to get across. Judge Kuczynski talks about some speculation, but could you point me to that in the record? Probably not. I'm looking at it right now, to be honest. It would take too long to go through it. You don't have the transcript? I do, but it would take me a moment to search through it. Would you like me to give you mine? I have mine. It would take me a moment. Okay. Do you want to take a moment to look at it? Sure, may I? Okay. Looking at page 47. I'm sorry, 47? Page 47 of the deposition transcript of Mr. Montgomery. Is that 242 on the bottom? You're not talking about the deposition? I just have the deposition transcript with me. 143 on the bottom. 143 on the bottom. What page did you first say, 47? 47 of the deposition of Mr. Montgomery. This is 487, base number 108 at the bottom, right? Okay. Okay, question. Or excuse me, answer. He got to the door, and I think at that point he just told me, shh, just like we were walking. And he was, shh, and then he kind of, I don't know, the door there was no door handle on it, so if you were looking, you could see through the door into the next room. So there was a hole where the door nibbled a bit. Yeah, so he crouched down and he was looking through the hole. And at that point, I don't know if the officers opened the door or if he just lost his balance and just fell out of the door. I don't know because I wasn't him. I don't know what happened. That's your case right there. Thank you. Sorry, it took me so long to get there. You've got a minute for rebuttal. Thank you, Your Honor. The real question here is was it reasonable? Was the officer's actions reasonable if he wasn't attacked? The city's own argument belies the fact that there's a genuine dispute here. Let's take the one possibility that Mr. Montgomery posits, and that is that he's sitting there crouching by the door. He loses his balance. He comes tumbling out the door. Now, the officer is within a foot of the door. It's dark. He is reaching around. He's trying to open his door. Suddenly, the door bursts open, if we take that scenario, and his body comes tumbling out. And at the same time, the compressor goes on, and there's this fairly loud sound, I gather. Why wouldn't it be reasonable for the officer to think of the circumstances of being attacked and use his weapon? One, because there are no facts that demonstrate that he burst through the door. I'd like to point your... No, I'm taking the one possibility that Montgomery says. He might have. He thinks that one possibility is that he tumbled through the door. Now, you know, it's sort of a body that tumbles through, causes the door to burst open, so that he loses his balance. The close quarters. Why wouldn't it be reasonable for the officer to think he's being attacked? Well, under the circumstances, the reason is because, again, there are no facts that the door burst open. Secondly, the city just argued that... Are you focusing on the word burst? Yeah, I'm focusing on the word burst. Well, let's take what Montgomery says. He loses his balance, and the door comes open. So let's remove the word burst. The door opens, and this body comes tumbling out. Having lost his balance, he's obviously sort of lurching forward. I mean, I don't know much what to call it, but he's not under control. He's obviously moving under the force of gravity. He's not just standing there. Why wouldn't an officer in close quarters at night reasonably believe that he is under attack? Well, because under those circumstances, I mean, you're giving the officer the benefit of the doubt to say that under those circumstances he may be under an attack. What if the door opened, and it was a homeless person who was there seeking shelter? The city has argued that 99% of these calls are false. If you answer my question, I'll answer your question. Okay. I asked you a question first. Well, under the circumstances... Why would we take it that way? You're asking whether it's reasonable, and I'm suggesting that there's enough here that a reasonable jury could differ. The district court concluded, as a matter of fact, that all officers would act in the same manner because it was clearly reasonable under these circumstances. But because there is a factual dispute as to what happened at that moment that door opened, the ultimate question then is whether or not... I'm sorry. I'm totally lost. What is the factual dispute? The factual dispute is... One possibility that Montgomery takes is that this is what might have happened, that he's behind the door, he loses his balance, he goes through the door, whether you want to call it a burst or falls or whatever, but in an uncontrolled way, because he's lost his balance, he causes the door to open and his body falls through the door. Now, what's the dispute there? Well, what's in dispute is whether that action is enough to give a reasonable officer the belief... Well, that's not a factual dispute. That is exactly the kind of thing that we do. We say, under those circumstances, is it reasonable for an officer to use his weapon when he's in close quarters? And we could answer the question yes, we could answer the question no, but there's nothing there for a jury to decide. Well, there is because, again, I would argue that what happens at that moment when the door opens, the city wants to argue that there was a struggle, that there was a fight here. And what Montgomery says, and I can point you to it, it's bait numbered 489, Montgomery says, you know, the question, I'll go through the series of it here, this is on 489, the door either opened or he lost his balance and he fell through the door. What do you mean by fell? Like fell, like I guess he was crouching, like your knees, I mean like crouching, looking through the hole to look through the hole. And then what I mean by he just fell out, like he fell to the ground. But that's not inconsistent. I didn't hear the city say there was a fight. It was more the notion of the dark and this person falling out of a door. Is that inconsistent with what you just read? It's not inconsistent, but what I want to suggest is that the city's entire argument is that there's a struggle. And there clearly is not a struggle. And my suggestion is that by virtue of there being a factual discrepancy at the moment that the door opens, and given that you have to view the facts as they are inferred in our favor. Well, I don't think there is a discrepancy. If you look at the bottom of 489 on top of 490, he says, the question is, so he crouched against the door and then what you thought appeared to fall outward. What happened? I heard a couple of shots. So this was not a situation where he's standing there, he gets shot and falls forward. Montgomery himself says, the guy falls forward, then there are a couple of shots. The sequence is set. There's no dispute about that. It's entirely consistent with the officer's testimony. It really isn't consistent with the officer's testimony because the officer's testimony is that there is a struggle. And there clearly is not a struggle. And I would argue that by virtue of there being a dispute. That's really slicing the salami very thin because he's in there in the dark. This guy, door bursts open. This guy falls on him. The guy might not think he's struggling, but the officer who's there and had the guy fall on top of him may think there is a struggling going on. No? Dark. It's crowded. There's noise comes on. I think some officers would suggest that. But I think other officers would suggest that doesn't give rise to use of lethal force. Because, again, the parameters for using lethal force are strict. There must be an imminent threat of attack. And under these circumstances, I would argue, simply falling over is not an imminent threat of attack. Even falling over on top of the officer? Well, I don't think there's any fact that he fell over on top of the officer. I asked you a question. If he were to fall on top of the officer, well, Your Honor, you've changed the facts substantially. And if that were the case, then I would have to concede that his use of force under those circumstances might be reasonable. But at the same time, if... So if we read the record as suggesting that he fell on top of the officer, that's in the case as far as you're concerned? If the record were clear that he fell on top of the officer, then I would say we would have a different argument. But the facts are in dispute. And because the facts are in dispute, and there is enough to take... I'd like to hear what that other argument is. You said you'd have a different argument. I don't know. I mean, I'm going to ask you a question. If, in fact, we read the record as saying that he fell on top of the officer, do you still have something left? Or is that the end of the case as far as you're concerned? Well, I mean, I'm not experienced enough in police protocol to know what rises to an imminent threat or what doesn't rise to an imminent threat. The way you've described it, I mean, let's paint it in the city's favor. The door bursts open, the guy falls out on him, there's actual contact between the parties. Then I would concede that under those circumstances, it might be a different story, a different result. However, that's not the facts that we're dealing with here. The facts are in dispute. And because they're in dispute, they have to be weighed in our favor. And I think that we are entitled to a remand. Thank you very much. Thank you. KJ's argument stands adjourned. On the exterior argument in the last case on the argument calendar, TANSTEC Asia versus MV Harmony Container. Thank you.
judges: Kozinski, Tashima, McKeown